# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| SHELBY PETTY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Civil Action No. CV-09-S-1465-NE |
| | ) |
| UNITED PLATING, INC., | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shelby Petty, commenced this action against his former employer, United Plating, Inc.[1]  His complaint asserts four claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981, and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA").[2] Plaintiff alleges that defendant subjected him to discriminatory discipline and wage discrimination on the basis of his race, and interfered with his right to reinstatement under FMLA.

The case presently is before the court on a motion for summary judgment and two related motions to strike filed by defendant.[3]  Upon consideration of the motions,

---

[1] Doc. no. 1 (Complaint).

[2] *See id.* at 6-16.

[3] Doc. no. 20 (Motion for Summary Judgment); doc. no. 31 (Motion to Strike Portions of Plaintiff's Declaration); doc. no. 32 (Motion to Strike Unsworn Statements).

briefs, and evidentiary submissions, the court concludes that defendant's motions to strike are due to be granted in part and denied in part, and the motion for summary judgment is due to be granted in favor of defendant on all claims.

## I.  MOTIONS TO STRIKE

Defendant filed a motion to strike portions of plaintiff's declaration, and a motion to strike several unsworn statements attached as evidence supporting plaintiff's brief in opposition to the motion for summary judgment.

## A.    Motion to Strike Portions of Plaintiff's Declaration

Defendant asks the court to strike the statement in plaintiff's declaration that he "was paid less than . . . similarly situated individuals" identified in the affidavit, and argues that the statement is a conclusory allegation lacking a basis in the evidence.[4]  "Conclusory allegations [in an affidavit] without specific supporting facts have no probative value."  *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).  Thus, because it is a legal conclusion, the court will not consider plaintiff's assertion that he was "similarly situated" to certain co-employees.

Defendant also asks the court to strike the statement in plaintiff's declaration that "it was a common practice for managers/supervisors to not clock out all of the

---

[4] Doc. no. 27-1 (Plaintiff's Declaration) ¶ 7; *see also* Motion to Strike Portions of Plaintiff's Declaration ¶¶ 7-8.

2

time when they left work."[5]  Defendant asserts that this statement also is a conclusory allegation because it is not supported by any specific facts.[6]  Contrary to defendant's argument, however, the next sentence in plaintiff's affidavit provides factual support for his challenged assertion.  He states:  "I have observed white managers and supervisors not clocking out to go to the bank, visit sick relatives, and run other personal errands."[7]  Additional factual support for his assertion is provided in plaintiff's deposition.[8]  Even though the phrase "common practice" leaves much to be desired in terms of specificity, it is not such an amorphous term as to render the factual assertion improper for consideration on summary judgment.  Viewing the facts in the light most favorable to the non-moving party, the court will construe "common practice" to mean that, on numerous occasions over the course of his employment with defendant, plaintiff observed managers and supervisors leave work without clocking-out.[9]  Whether "common practice" so lacks specificity as to affect the weight and credibility of plaintiff's evidence is a matter to be determined by a trier of fact at a trial.  Therefore, this aspect of defendant's motion to strike is overruled and denied.

---

[5] Plaintiff's Declaration ¶ 21; *see also* Motion to Strike Portions of Plaintiff's Declaration¶¶ 7-8.

[6] *See* Motion to Strike Portions of Plaintiff's Declaration¶¶ 7-8.

[7] Plaintiff's Declaration ¶ 21.

[8] *See* doc. no. 22-3 (Plaintiff's Deposition), at 150-78.

[9] *See id.* at 149-51.

Defendant also seeks to strike a portion of plaintiff's declaration that allegedly conflicts with his deposition testimony.[10]  In his declaration, plaintiff states that he supervised sixteen employees.[11]  During his deposition, however, plaintiff made clear that he supervised only eight employees.  Plaintiff first testified:

> Q.   How many employees were working under you in 2007?
>
> A.   I would say about eight, I think.  That's the first and second shift.[12]

Plaintiff later clarified that statement, testifying:

> Q.   You testified earlier that you had eight employees working under you on the first and second shift.  Was that combined, or did you have eight employees on the first shift and eight employees on the second shift?
>
> A.   Combined.[13]

The statement in plaintiff's declaration that he supervised sixteen employees directly contradicts his earlier deposition testimony that he supervised a "combined" number of eight employees on the first and second shifts, and plaintiff has not provided an explanation for the contradiction.  Thus, the statement in his declaration is due to be stricken.  *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d

---

[10] *See* Motion to Strike Portions of Plaintiff's Declaration ¶¶ 9-13.

[11] Plaintiff's Declaration ¶ 5.

[12] Plaintiff's Deposition, at 89.

[13] *Id.* at 245-46.

4

656, 657 (11th Cir. 1983) ("When a party has given clear answers to unambiguous questions which negate the existence of a genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit if it merely contradicts, without explanation, previously given testimony.").

## B.    Motion to Strike Unsworn Statements

Plaintiff submitted as evidence seven statements of former co-employees contained in the file created by the Equal Employment Opportunity Commission ("EEOC") after plaintiff filed his charge of discrimination, and defendant moves to strike those statements because they are not sworn.[14]  It is well settled that "[u]nsworn statements 'do[] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and *cannot* be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)) (emphasis and first alteration supplied).[15]  The fact that the unsworn statements are contained in an EEOC file does not render them

---

[14]  *See* Motion to Strike Unsworn Statements, at 2-10; doc. no. 27-2, Ex. 8 (Equal Employment Opportunity Commission File), at 20-35.

[15]  There is an alternative to the requirement of swearing to the truth of the contents of a statement.  A statement is to be given the same effect as a sworn statement if the person making the statement signs the document and subscribes to it using the language:  "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."  28 U.S.C. § 1746.  That exception is not applicable here because none of the statements in dispute contain any averment to the truth of their contents, much less the language required by 28 U.S.C. § 1746.  *See* Equal Employment Opportunity Commission File, at 20-35.

admissible.  *See, e.g.*, *Wells v. XPEDX*, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, at *11 (M.D. Fla. Sept. 11, 2007) ("[T]he EEOC documents Plaintiff provides in support of his response are not properly authenticated, attached to any supporting affidavit, or otherwise verified.  The documents are also inherently inadmissible.  Thus, this court may not consider such evidence in evaluating the motion for summary judgment.").  The statements that defendant challenges are unsworn, unauthenticated, not attached to any supporting affidavit, and not otherwise verified.  Thus, the statements may not be considered in ruling on the motion for summary judgment, and are due to be stricken.

It must be noted, however, that defendant also submited several unsworn statements in support of its motion for summary judgment — specifically, the statements of Scotty Hoover,[16] William "Clay" Lassiter,[17] Cleo Moon,[18] Bobby Christian,[19] and Moses Eno.[20]  For the same reasons discussed above, this court consistently determines, *sua sponte*, that those statements also cannot be considered in ruling on defendant's motion for summary judgment.

---

[16] Doc. no. 22-9 (Statement of Scotty Hoover).

[17] Doc. no. 22-10 (Statement of William "Clay" Lassiter).

[18] Doc. no. 22-11 (Statement of Cleo Moon).

[19] Doc. no. 22-12 (Statement of Bobby Christian).

[20] Doc. no. 22-13 (Statement of Moses Eno).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[21]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'" *Farley v. Nationwide Mutual. Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman*

---

[21] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

### III.  SUMMARY OF RELEVANT FACTS[22]

---

[22] Before stating the facts relevant to consideration of defendant's motion for summary judgment, it is necessary to address the sufficiency of plaintiff's denial of a number of facts alleged by defendant to be "undisputed."  Defendant cites portions of the affidavit of James P. Butler, the company's "Controller," as support for several of its allegedly "undisputed facts."  Plaintiff states that he cannot admit or deny those facts, because "Butler is an interested witness whose credibility on this and other material facts is at issue in this case."  That assertion is wrong-headed.  Factual assertions contained in the affidavits of interested witnesses may be considered as factual support for a motion for summary judgment unless contradicted by evidence presented by the non-moving party.  Rule 56 provides for affidavits as one method of supporting a motion for summary judgment, and does not require that such affidavits be from "disinterested witnesses."  *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 856 (1st Cir. 2008) ("At summary judgment we need not exclude all interested testimony, specifically testimony that is

Defendant, United Plating, Inc., provides metal finishing services and employed 200 persons when plaintiff was terminated in 2007.[23]  The company receives steel and aluminum parts from its customers, applies finishes (*i.e.*, coatings) to those parts, and then returns the parts to the customers.[24]  Defendant utilizes electroplating in most of its work.[25]  "Electroplating" is a process through which a thin layer of a desired material is applied to the surface of the base metal.[26]  Electroplating is most often used to coat a metal part with a material that gives the surface of the part a desired property, for example wear resistance, corrosion

---

uncontradicted by the nonmovant.").

Furthermore, when "adjudicating a motion for summary judgment, a court may consider any evidence that would be admissible at trial."  *Victoria L. by Carol A. v. District School Board of Lee County, Florida*, 741 F.2d 369, 373 (11th Cir. 1984), *abrogated on other grounds by Honig v. Doe*, 484 U.S. 305 (1988).  The admissibility of a witness's testimony at trial does not depend on whether the witness is interested or disinterested.  *See* Fed. R. Evid. 601 ("Every person is competent to be a witness except as otherwise provided in these rules.").  Thus, affidavits of interested witnesses may be considered when deciding a motion for summary judgment.

Finally, when responding to a motion for summary judgment, the plaintiff bears the burden to present evidence disputing the defendant's evidence.  *See Celotex*, 477 U.S. at 322.  To the extent that defendant presents evidence in support of its arguments, including affidavits of interested witnesses, and the plaintiff does not present contradictory evidence, this court must credit the defendant's undisputed evidence as true for the purposes of summary judgment.  Thus, because plaintiff's denial of the factual assertions contained in the affidavit of Jim Butler is without merit, and plaintiff did not provide evidence controverting those assertions, the court must consider the facts as having been admitted.

[23] *See* Brief in Support of Motion for Summary Judgment, at 1; Response in Opposition to Motion for Summary Judgment, at 1; doc. no. 22-1 (Deposition of Mike Fann), at 28, 30-32.

[24] *See* Deposition of Mike Fann, at 30-32.

[25] *See* Response in Opposition to Motion for Summary Judgment 10; doc. no. 28 (Reply in Support of Motion for Summary Judgment), at 3; doc. no. 27-1 (Plaintiff's Declaration) ¶ 3.

[26] *See* Response in Opposition to Motion for Summary Judgment, at 10; Reply in Support of Motion for Summary Judgment, at 3; Plaintiff's Declaration ¶ 3.

protection, lubricity, or aesthetic properties.[27]

Plaintiff, Shelby Petty, an American citizen with African ancestors, was hired by defendant as an "Electroplater I" in September of 1974.[28]  He was employed by defendant from that date until he was terminated on December 13, 2007.[29]  At the time of his termination, plaintiff was employed as the Production Manager for both the phosphate and zinc production lines.[30]

## A.    Defendant's Management

Michael Emerson ("Mike") Fann has been President of defendant since 1982.[31] James P. ("Jim") Butler has been the company's Controller since 1990, and he is also responsible for human resources and personnel issues.[32]  At the time of plaintiff's termination in 2007, the supervisors who reported to Fann included the following seven persons:  plaintiff, Shelby Petty; Jeff Harbin; Bobby Christian; Larry Hunt;

---

[27] See Response in Opposition to Motion for Summary Judgment, at 10; Reply in Support of Motion for Summary Judgment, at 3; Plaintiff's Declaration ¶ 3.

[28] See doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 5;Response in Opposition to Motion for Summary Judgment, at 3; doc. no. 22-3 (Plaintiff's Deposition), at 24.

[29] See Response in Opposition to Motion for Summary Judgment, at 10; Reply in Support of Motion for Summary Judgment, at 3; Plaintiff's Deposition, at 97-104.

[30] Plaintiff's Deposition, at 32-33.

[31] See Brief in Support of Motion for Summary Judgment, at 1; Response in Opposition to Motion for Summary Judgment, at 1; Deposition of Mike Fann, at 28-29, 34.

[32] See Brief in Support of Motion for Summary Judgment, at 1; doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 2; Deposition of Mike Fann, at 38.

Moses Eno; Larry McAllister; and Johnny Loveday.[33]

## B.    Defendant's Policies Regarding Attendance and Time Records

Plaintiff signed a form on October 15, 2002, acknowledging that he had received *and read* the most recent version of defendant's employee handbook.[34]  That handbook contained a "Working Hours" policy that provided:  "**Failure to clock in or out can result in disciplinary action up to and including termination**."[35]  The handbook also contained a "Work Rules" section that provided:  "Leaving the job during work hours without supervisor permission," or "[d]eliberately falsifying . . . any personnel records, production or work reports or any other company records," would result in "disciplinary action, including discharge, either after a warning, or immediately and without warning, depending on the character of the offense."[36]

Plaintiff acknowledged that, at the time of his termination, he understood that leaving his job during working hours without clocking-out, or that falsifying work records or production reports, could result in termination of his employment.[37]

---

[33] *See* Brief in Support of Motion for Summary Judgment, at 1; Response in Opposition to Motion for Summary Judgment, at 2; Deposition of Mike Fann, at 35-37.

[34] *See* Brief in Support of Motion for Summary Judgment, at 4; Response in Opposition to Motion for Summary Judgment, at 3.

[35] Doc. no. 22-5 (Working Hours Policy) (emphasis in original).

[36] Doc. no. 22-6 (Work Rules Policy), at 1-2 (alterations supplied).

[37] *See* Plaintiff's Deposition, at 79-80; *see also* Brief in Support of Motion for Summary Judgment, at 4-5; Response in Opposition to Motion for Summary Judgment, at 3.

## C.      Compensation

Plaintiff was paid $15.00 an hour on the date he was fired.[38]  He supervised

eight employees as the Production Manager for the phosphate and zinc production

lines.[39]  His duties were to inspect the tanks holding chemicals used in the respective

production processes, fill the tanks with solution to the proper level, heat the tanks

to the proper temperature, control the flow of steam, move parts to the production

line, take samples from the tanks to verify the content of the solution within, add

chemicals to the tanks if necessary, inspect the quality of completed parts, and operate

a forklift to load and unload parts.[40]  The phosphate line production process involves

cleaning a steel part, washing the part with acid, placing the part into a phosphate

solution for a specified period of time, rinsing the part, and applying a sealant to the

part.[41]   The zinc production line process is identical to the phosphate line process,

except that a zinc solution is used, and a "DC rectifier" provides an electrical charge

to drive the zinc plating onto the part.[42]

Four white supervisors were paid more than plaintiff:  *i.e.*, Larry Hunt; Larry

---

[38] *See* Brief in Support of Motion for Summary Judgment, at 6; Response in Opposition to Motion for Summary Judgment, at 4.

[39] *See* Plaintiff's Deposition, at 89, 245-46.

[40] *See* Response in Opposition to Motion for Summary Judgment, at 11; Reply in Support of Motion for Summary Judgment, at 3; Plaintiff's Deposition, at 92-93; Plaintiff's Declaration ¶ 5.

[41]*See* Deposition of Mike Fann, at 88-89.

[42] *See id.* at 93-94.

McAllister; Bobby Christian; and Jeff Harbin.[43]

Larry Hunt was the manager of the Maintenance Department.[44]  For the period from November 11, 2006, to December 31, 2007, he was paid at the rate of $18.50 an hour.[45]  He supervised three to four employees, and was responsible for purchasing parts and keeping all of defendant's equipment in operation.[46]

Larry McAllister was the Quality Control Manager.[47]  He was paid a salary of $1,417.16 a week — an amount that, assuming a forty-hour work-week, compares to a wage rate of approximately $35.43 an hour.[48]  As Quality Control Manager, McAllister supervised lab employees, exercised oversight of all chemical processes on the production lines, and performed other ancillary duties.[49]  His job required an

---

[43] *See* Response in Opposition to Motion for Summary Judgment, at 12; Reply in Support of Motion for Summary Judgment, at 3-4.

[44] *See* Brief in Support of Motion for Summary Judgment, at 3; Response in Opposition to Motion for Summary Judgment, at 3, 12; Reply in Support of Motion for Summary Judgment, at 3-4.

[45] *See* Response in Opposition to Motion for Summary Judgment, at 12; Reply in Support of Motion for Summary Judgment, at 3-4.

[46] *See* Brief in Support of Motion for Summary Judgment, at 3; Response in Opposition to Motion for Summary Judgment, at 3-4; Deposition of Mike Fann, at 64-66, 70.

[47] *See* Response in Opposition to Motion for Summary Judgment, at 12; Reply in Support of Motion for Summary Judgment, at 3-4.

[48] *See* Response in Opposition to Motion for Summary Judgment, at 12; doc. no. 28 (Reply in Support of Motion for Summary Judgment), at 3-4.

[49] *See* Brief in Support of Motion for Summary Judgment, at 4; Response in Opposition to Motion for Summary Judgment, at 3, 12; Reply in Support of Motion for Summary Judgment, at 3-4; doc. no. 22-1 (Deposition of Mike Fann), at 75.

extensive knowledge of chemistry, and he possesses a degree in chemistry.[50]  He also

assisted the company president in quoting prices for work to be performed on steel

parts.[51]  Additionally, he supervised an undisclosed number of lab technicians, and

was responsible for assisting all supervisors with the chemical processes performed

on their respective production lines.[52]

Bobby Christian was Production Manager for the anodizing, silk screen, and

masking operations.[53]  He was paid a salary of $1,404.20 a week — an amount that,

assuming a forty-hour work-week, compares to a wage rate of approximately $35.11

an hour.[54]  He supervised two shifts on which a total of approximately thirty workers

and two shift leaders were employed.[55]  As Production Manager for anodization, he

was responsible for ensuring the proper anodization of aluminum parts.[56]   He

---

[50] *See* Brief in Support of Motion for Summary Judgment, at 4; Response in Opposition to Motion for Summary Judgment, at 3; Deposition of Mike Fann, at 75.

[51] *See* Brief in Support of Motion for Summary Judgment, at 4; Response in Opposition to Motion for Summary Judgment, at 3; Deposition of Mike Fann, at 84.

[52] *See* Deposition of Mike Fann, at 74-79.

[53] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2, 13; Reply in Support of Motion for Summary Judgment, at 3-4.

[54] *See* Response in Opposition to Motion for Summary Judgment, at 13; Reply in Support of Motion for Summary Judgment, at 3-4.

[55] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 2; Response in Opposition to Motion for Summary Judgment, at 2; Deposition of Mike Fann, at 61-62.

[56] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2; Deposition of Mike Fann, at 53.

sometimes "wrote the processes" necessary to complete anodizing jobs.[57]  Written instructions, called the "process," were created for many jobs in order to inform a worker on the line exactly what to do to the part in order to properly anodize it.[58] Christian was a nationally recognized anodizing expert and served on the Board of Directors of the Aluminum Anodizer Counsel.[59]  As Production Manager for silk screen operations, he supervised a process that utilizes photographic equipment and ink to imprint an image onto a piece of metal.[60]  As Production Manager for masking operations, he supervised a process in which certain portions of metal parts are "masked off," in order to prevent those portions from being anodized.[61]  Finally, he was responsible for programming, operating, and troubleshooting the machines that mechanically moved parts from one location to another in the production process.[62]

Donald Harbin was the manager of defendant's paint and blasting operations.[63]

---

[57] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2; Deposition of Mike Fann, at 54-55.

[58] *See* Deposition of Mike Fann, at 54-55.

[59] *See* Brief in Support of Motion for Summary Judgment, at 2-3; Response in Opposition to Motion for Summary Judgment, at 3; Deposition of Mike Fann, at 54.

[60] *See* Brief in Support of Motion for Summary Judgment, at 3; Response in Opposition to Motion for Summary Judgment, at 3; Deposition of Mike Fann, at 57-58.

[61] *See* Brief in Support of Motion for Summary Judgment, at 3; doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 3.

[62] *See* Brief in Support of Motion for Summary Judgment, at 3; Response in Opposition to Motion for Summary Judgment, at 3; Deposition of Mike Fann, at 52, 60-61.

[63] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 5, 13; Reply in Support of Motion for Summary Judgment, at 3-4; Deposition of Mike Fann, at 44.

He was paid at the rate of $19.00 an hour as of March 2007.[64]  As manager of paint and blasting operations, Harbin supervised the painting and blasting of parts.[65]  He was responsible for knowing and applying the different military specifications for particular jobs, the different types and percentages of paints to mix for a job, and the thickness of the paint coating to apply for a job.[66]  Harbin supervised two shifts that comprised fifty to seventy-five employees and three or four shift leaders.[67]

When plaintiff learned that the foregoing white supervisors were compensated at a higher rate than he was, he requested a raise.[68]  Even though he received the requested raise, plaintiff's pay still was lower than the white supervisors.[69]  Thus, plaintiff requested that he be placed on a salary, like some white managers, in November of 2007.[70]  There is no evidence as to the response of defendant's management to that request.

---

[64] *See* Response in Opposition to Motion for Summary Judgment, at 13; Reply in Support of Motion for Summary Judgment, at 3-4.

[65] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2.

[66] *See* Deposition of Mike Fann, at 45-46.

[67] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2; Deposition of Mike Fann, at 44-48.

[68] *See* Response in Opposition to Motion for Summary Judgment, at 13; Reply in Support of Motion for Summary Judgment 3-4; doc. no. 27-1 (Plaintiff's Declaration) ¶ 7.

[69] *See* Response in Opposition to Motion for Summary Judgment, at 13; Reply in Support of Motion for Summary Judgment 3-4; Plaintiff's Declaration ¶ 12.

[70] *See* Response in Opposition to Motion for Summary Judgment, at 13; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Declaration ¶ 12.

**D.     Plaintiff's Medical Leave and Termination**

Plaintiff was diagnosed with prostate cancer in June of 2007.[71]  He personally informed Butler and other members of defendant's management of the diagnosis.[72] Fann also received notice of plaintiff's diagnosis.[73]

For approximately six months, plaintiff received treatment for the cancer on an outpatient basis.[74]  He then scheduled a surgical procedure for December of 2007 and, in late November 2007, informed Jim Butler and Mike Fann that he needed time off for surgery — a procedure that he "thought would require missing [only] one to two days of work."[75]  Jim Butler was in charge of handling employee requests for time off under the Family and Medical Leave Act, and he was authorized to grant such leave without consulting any other members of management.[76]

On December 5, 2007, Bobby Christian notified Fann and Butler that he was

---

[71] *See* Response in Opposition to Motion for Summary Judgment, at 14; Reply in Support of Motion for Summary Judgment, at 3-4.

[72] *See* Response in Opposition to Motion for Summary Judgment, at 14; Reply in Support of Motion for Summary Judgment, at 3-4; doc. no. 22-3 (Plaintiff's Deposition), at 205.

[73] *See* Response in Opposition to Motion for Summary Judgment, at 14; Reply in Support of Motion for Summary Judgment, at 3-4; Deposition of Mike Fann, at 99-101.

[74] *See* Response in Opposition to Motion for Summary Judgment, at 14; Reply in Support of Motion for Summary Judgment, at 3-4.

[75] *See* Response in Opposition to Motion for Summary Judgment, at 14; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Declaration ¶ 17 (alteration supplied).

[76] *See* Deposition of Mike Fann, at 104.

17

having difficulties with the employees normally supervised by plaintiff.[77]   Those

employees had been asked by Scotty Hoover, another supervisory employee, to assist

on another production line because they were not working on anything at the time,

but they refused to assist.[78]   Hoover could not resolve the issue with plaintiff, because

Hoover had been unable to find plaintiff anywhere on the premises.[79]   Christian

reported the problem to Fann and Butler.[80]

On December 7, 2007, Fann searched the premises for plaintiff in order to

discuss the events of December 5th with him, but could not find him.[81]   Plaintiff's

time card showed that he had clocked-in at 3:16 a.m that day.[82]   Later that morning,

Butler observed plaintiff return to work, stay for a short period of time, and then

leave.[83]   Plaintiff did not clock-out when leaving the plant.[84]   Later that day, plaintiff

---

[77] *See* Brief in Support of Motion for Summary Judgment, at 6; Response in Opposition to Motion for Summary Judgment, at 5.

[78] *See* doc. no. 22-2 (Affidavit of James Butler), at 2.

[79] *See id.*

[80] *See id.*

[81] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 5; doc. no. 22-1 (Deposition of Mike Fann), at 105-08.

[82] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 5; doc. no. 22-8 (Plaintiff's Timecard).

[83] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 6-7; Affidavit of James Butler, at 2.

[84] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 7; Affidavit of James Butler, at 2.

returned to the plant and clocked-out.[85]

Fann and Butler finally met with plaintiff on December 10, 2007.[86]   He reminded them of his prostate cancer surgery scheduled for the next day, and said that he would need one day off work for the surgery.[87]   Fann told plaintiff to take the needed time off,[88] but not to clock-in when he returned to work; instead, Fann instructed plaintiff to come see him.[89]   Fann and Butler also informed plaintiff that his absences from work were being investigated; and, until that investigation was concluded, he was suspended with pay.[90]   During the course of the meeting, Fann did not make any negative remarks to plaintiff about his request to take time off of work for the surgical procedure.[91]

As part of their investigation, Fann and Butler met with employees who worked

---

[85] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 7; Affidavit of James Butler, at 2.

[86] *See* Response in Opposition to Motion for Summary Judgment, at 14; doc. no. 28 (Reply in Support of Motion for Summary Judgment), at 3-4; Plaintiff's Deposition, at 97.

[87] *See* Brief in Support of Motion for Summary Judgment, at 8; Response in Opposition to Motion for Summary Judgment, at 7, 14; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Deposition, at 98-102; Deposition of Mike Fann, at 101.

[88] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 8; Response in Opposition to Motion for Summary Judgment, at 8; Deposition of Mike Fann, at 129.

[89] *See* Brief in Support of Motion for Summary Judgment, at 8; Response in Opposition to Motion for Summary Judgment, at 8; Plaintiff's Deposition, at 101-02.

[90] *See* Brief in Support of Motion for Summary Judgment, at 8; Response in Opposition to Motion for Summary Judgment, at 7-8.

[91] *See* Brief in Support of Motion for Summary Judgment, at 8;Response in Opposition to Motion for Summary Judgment, at 8.

with plaintiff.[92]  They concluded that plaintiff likely failed to work many of the hours for which he received compensation.[93]  Fann and Butler decided to terminate plaintiff's employment due to his violation of defendant's policies on attendance and falsification of records.[94]

Plaintiff underwent the scheduled prostate surgery on December 11, 2007.[95] Due to complications, he was not discharged from the hospital until December 13, 2007.  That same day, he returned to the plant and met with Fann and Butler,[96] who told him that he was fired, and that the termination was due to his chronic failure to clock-out when leaving the plant during work hours.[97]  Plaintiff admitted that he often had left work without clocking-out, but explained that he did so because he sometimes came in at night and worked without clocking-in, so the total number of hours he actually worked were equal to the number of hours for which he was

---

[92] *See* Brief in Support of Motion for Summary Judgment, at 8; Response in Opposition to Motion for Summary Judgment, at 8; Affidavit of Jim Butler ¶ 27; Deposition of Mike Fann, at 108-18.

[93] *See* Brief in Support of Motion for Summary Judgment, at 7; Response in Opposition to Motion for Summary Judgment, at 6-7.

[94] *See* Brief in Support of Motion for Summary Judgment, at 10; Response in Opposition to Motion for Summary Judgment, at 9.

[95] *See* doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 14; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Deposition, at.100-03.

[96] *See* Plaintiff's Deposition, at 104.

[97] *See* Brief in Support of Motion for Summary Judgment, at 10; Response in Opposition to Motion for Summary Judgment, at 9, 14; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Deposition, at 104.

clocked-in.[98]

During plaintiff's thirty-three years of employment with defendant, it was common for managers and supervisors to not clock-out when leaving work for short periods of time during a work-shift.[99]   White managers and supervisors regularly failed to clock-out when, for example, going to the bank, visiting sick relatives, or conducting personal business.[100]   Nevertheless, since 2003 defendant has terminated at least four other employees for not clocking-out when leaving work.[101]   All four of those employees were white.[102]   Plaintiff participated in the termination of one of those four employees.[103]

## E.   Plaintiff's Post-Termination Administrative Filings

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 11, 2008, alleging race and age

---

[98] *See* Plaintiff's Deposition, at 106-14.

[99] *See* Response in Opposition to Motion for Summary Judgment, at 15; Reply in Support of Motion for Summary Judgment, at 4.

[100] *See* Response in Opposition to Motion for Summary Judgment, at 15; Reply in Support of Motion for Summary Judgment, at 3-4; doc. no. 22-3 (Plaintiff's Deposition), at 144-85.

[101] *See* Brief in Support of Motion for Summary Judgment, at 11; Response in Opposition to Motion for Summary Judgment, at 9.

[102] *See* Brief in Support of Motion for Summary Judgment, at 11; Response in Opposition to Motion for Summary Judgment, at 10.

[103] *See* Brief in Support of Motion for Summary Judgment, at 11; Response in Opposition to Motion for Summary Judgment, at 9.

21

discrimination based solely upon his termination.[104]   Since then, plaintiff has not

pursued the claim that he was terminated because of his age.[105]   He filed an amended

EEOC charge on January 19, 2009, in which he added a claim for disability

discrimination.[106]

Plaintiff also filed a claim for unemployment benefits with the Alabama

Department of Industrial Relations.[107]   The Department of Industrial Relations

examiner made a determination, which is not disclosed in the record; even so, it must

have favored plaintiff, because defendant appealed the determination and a hearing

was held on January 8, 2009.[108]  Plaintiff admitted during the hearing that he had left

work without clocking-out.[109]  The Department of Industrial Relations accordingly

issued a determination finding that:  "The employer terminated the claimant for

leaving the work site without clocking out."[110]  The Department concluded that such

---

[104] *See* Brief in Support of Motion for Summary Judgment, at 12; Response in Opposition to Motion for Summary Judgment, at 10; doc. no. 22-15 (January 1, 2008 EEOC Charge).

[105] *See* doc. no. 1 (Complaint).

[106] *See* Brief in Support of Motion for Summary Judgment, at 12; Response in Opposition to Motion for Summary Judgment, at 10; doc. no. 22-16 (January 19, 2009 EEOC Charge).

[107] *See* Brief in Support of Motion for Summary Judgment, at 12; Response in Opposition to Motion for Summary Judgment, at 10; Plaintiff's Deposition, at 136-37.

[108] *See* Brief in Support of Motion for Summary Judgment, at 12; Response in Opposition to Motion for Summary Judgment, at 10; doc. no. 22-17 (Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim), at 1; Plaintiff's Deposition, at 137.

[109] *See* Plaintiff's Deposition, at 137.

[110] Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim, at 1; *see also* Brief in Support of Motion for Summary Judgment, at 12; Response in Opposition to Motion for Summary Judgment, at 10;

"actions are deemed to be misconduct in connection with [the claimant's] work" and, thus, that plaintiff was disqualified from receiving unemployment compensation benefits.[111]

## IV. DISCUSSION

### A.    Americans with Disabilities Act

Plaintiff's brief in response to the motion for summary judgment "stipulates to the dismissal of his A.D.A. claims, only."[112]  Therefore, summary judgment is due to be entered in favor of defendant on plaintiff's claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 *et seq.*

### B.    Family and Medical Leave Act

The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"), provides that an eligible employee may take up to twelve weeks of leave each year for treatment of a serious health condition of the employee, to care for a serious health condition of the employee's child, spouse, or parent, or for the birth or adoption of a child.  *See* 29 U.S.C. § 2612(a)(1).  The FMLA further provides that

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave —

---

[111] Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim, at 1-2 (bracketed alteration supplied).

[112] Response in Opposition to Motion for Summary Judgment, at 18 n.2.

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).  Such entitlements are limited by a subsequent section, providing that an eligible employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). To secure the availability of the foregoing entitlements, Congress declared it "unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).

Consistent with the foregoing statutory provisions, the caselaw interpreting the FMLA recognizes two types of claims for alleged violations of the Act: "*interference claims*, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act . . . and *retaliation claims*, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act . . . ." *Strickland v. Water Works and Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (ellipses and emphasis

24

added, citations and footnote omitted).  *Accord O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000).[113]

Generally, to establish an *interference claim* "an employee must demonstrate [only] that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008) (alteration supplied).  *See also* 29 U.S.C. § 2615(a)(1); *Strickland*, 239 F.3d at 1206-07.  The employee need not "allege that his employer intended to deny the right; the employer's motives are irrelevant."  *Strickland*, 239 F.3d at 1208.

An eligible employee who takes FMLA leave is entitled to "any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3).  Specifically, an employee has a right, upon returning from FMLA leave, "to be restored by the employer to the position of

---

[113] A retaliation claim derives from the statutory language providing that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," 29 U.S.C. § 2615(a)(2), or because such individual

> (1) has filed any charge, or has instituted or caused to be instituted any proceedings, under or related to [the FMLA];

> (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under [the FMLA]; or

> (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under [the FMLA].

29 U.S.C. § 2615(b); *see also* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

employment held by the employee when the leave commenced," or to an equivalent position.   29 U.S.C. § 2614(a)(1)(A); *see also* 29 C.F.R. § 825.214(a).[114]   Those statutory provisions give rise to a specific FMLA interference claim:  the failure-to-reinstate interference claim.   To establish a failure-to-reinstate interference claim, an employee only must show that he or she was denied reinstatement upon returning from FMLA leave.  *See Martin*, 543 F.3d at 1267.

Even so, the right to be reinstated is not absolute.   "[A]n employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had he not been on FMLA leave.'"  *Id.* (quoting *Strickland*, 239 F.3d at 1208).[115]   If an

---

[114] The regulation cited in text reads:

> General rule. On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence. See also § 825.106(e) for the obligations of joint employers.

29 C.F.R. § 825.214(a).

[115] That rule is the result of 29 U.S.C. § 2614(a)(3)(B) and 29 C.F.R. § 825.216(a). 29 U.S.C. § 2614(a)(3) provides: "Nothing in this section shall be construed to entitle any restored employee to — . . . (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 C.F.R. § 825.216(a) provides:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

employer asserts that it did not interfere with an employee's right to reinstatement under that rule, "the employer bears the burden of proving that the employee was discharged *for independent reasons* that were unrelated to the employee's [FMLA] leave." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010) (citing *Parris v. Miami Herald Publishing Co.*, 216 F.3d 1298, 1301 n.1 (11th Cir. 2001)) (alteration and emphasis supplied); *see also Parris*, 216 F.3d at 1301 n.1 (holding that an employer that interferes with an employee's right to reinstatement "bears the burden of proving that the employee would have been laid off during the FMLA period for reasons unrelated to the [FMLA leave], and therefore is not entitled to restoration"). Thus, if an employer has a reason to discharge an employee — a reason that is not affected in any way by the employee's FMLA leave — then the employer lawfully may do so.

In sum, plaintiff's interference claim rests solely upon the contention that, when he returned to work on December 13, 2007, following his surgery, the termination he suffered that day was a failure to reinstate him to his former employment position.[116]

---

[116] Plaintiff's complaint states that: "Defendant failed and refused to restore plaintiff to the same or an equivalent position with equivalent employment benefits and other terms and conditions of employment as required by the FMLA, in violation of 29 U.S.C. § 2614(a)(1)-(3)." Doc. no. 1 (Complaint), at 7. Plaintiff's brief in response to defendant's motion for summary judgment spends two pages asserting that he gave adequate notice of his need to take FMLA leave and concludes with a single sentence relevant to his being "denied a benefit to which [he] was entitled under the

Also, it must be noted, but only in passing, that plaintiff's *brief* in response to the motion for summary judgment argues that defendant *retaliated* against him for taking FMLA leave by terminating his employment. However, plaintiff's *complaint* only states a FMLA interference claim, and does not allege a retaliation claim.[117] That argument will not be discussed, because a plaintiff cannot assert for the first time at the summary judgment stage a claim for relief that was not plead in his complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

### 1.    Collateral estoppel

Defendant asserts that plaintiff's FMLA interference claim is barred by the so-called "doctrine of collateral estoppel." Specifically, defendant asserts that the findings of the Alabama Department of Industrial Relations, a state agency, on plaintiff's unemployment compensation claim, collaterally estop him from relitigating the reason for his discharge and, thus, establish that defendant terminated his employment for a reason unrelated to his FMLA leave.

Collateral estoppel "precludes a party from relitigating in a subsequent action

___

FMLA": "Petty should never have been fired." *See* doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 20-22.

[117] *See* Complaint, at 5-8.

or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Urfirer v. Cornfeld*, 408 F.3d 710, 716 (11th Cir. 2005).[118] "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *See University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (ellipses in original, alteration supplied, and citation omitted) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also Travers v. Jones*, 323 F.3d 1294, 1296 (11th Cir. 2003).

In some employment law contexts Congress has abrogated by statute the doctrine of collateral estoppel for state administrative agency decisions. *See*, *e.g.*, *Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 107 (1991) (Age Discrimination in Employment Act); *Elliott*, 478 U.S. at 796 (Title VII). The *Elliott* Court cited two primary reasons for holding that Title VII abrogated the application of the doctrine of collateral estoppel to state administrative agency findings of fact. First, "[u]nder 42 U.S.C. § 2000e-5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give

---

[118] The "collateral estoppel doctrine" also has been defined as providing that, "[w]hen an issue of ultimate fact has been determined by a valid judgment, that issue cannot be again litigated between the same parties." *Black's Law Dictionary* 260 (6th ed. 1991) (alteration supplied).

'substantial weight to final findings and orders made by State and local authorities in proceedings commenced under State or local [employment discrimination] law.'" *Elliott*, 478 U.S. at 795 (first alteration supplied) (quoting 42 U.S.C. § 2000e-5(b)). The Court explained that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id*. Second, the Court found that the legislative history of Title VII confirmed the conclusion that Congress intended that individuals be provided a "trial *de novo* on Title VII claim[s]." *Id.* (alteration supplied).

The *Astoria* Court held that the filing requirements of the ADEA imply that state agency findings are not entitled to preclusive effect, and cited three examples in support of that holding. *Astoria*, 501 U.S. at 110-11.  First, the statute requires that where a state has its own age discrimination law, an ADEA complainant must first pursue the state law claim in state court before filing an ADEA suit in federal court. *Id.* (citing 29 U.S.C. § 633(b)).  Second, the statute provides that "'no suit may be brought under [the ADEA] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated.'" *Id.* (quoting 29 U.S.C. § 633(b)).  Third, the statute provides a similar deadline for filing a charge with the EEOC, providing that "'[s]uch a charge shall be filed . . . within 300 days after the alleged unlawful practice occurred, or within 30

days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.'" *Id.* (ellipsis in original) (quoting 29 U.S.C. § 626(d)(2)). Those provisions "plainly assume the possibility of federal consideration [of ADEA claims] after state agencies have finished theirs," and federal proceedings after the conclusion of state proceedings "would be strictly *pro forma* if state administrative findings were given preclusive effect." *Id.* (alteration supplied).

The FMLA contains no provisions dealing with prior state administrative action, however, and there is no indication of a Congressional intent to abrogate the doctrine of collateral estoppel for state administrative decisions. *See* 29 U.S.C. §§ 2601-2654. *See also Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 729 (2d Cir. 2001).[119]   Therefore, Congress has not abrogated the federal common-law doctrine of collateral estoppel for FMLA claims.  Stated differently, a plaintiff's FMLA claim may be collaterally estopped by the findings of a state administrative agency. *See Brockman v. Wyoming Department of Family Services*,

---

[119] In *Kosakow*, a panel of the Second Circuit held:

> The FMLA contains no provision dealing with prior state administrative actions.  Indeed, there is no indication of a Congressional intent anywhere in the FMLA to limit the preclusive effect of state administrative agency factual determinations.  The issues is simply not addressed, and, accordingly, we cannot say definitively that Congress intended to limit the role that a state administrative agency's findings would play in a subsequent suit under the FMLA in federal court.

*Kosakow*, 274 F.3d at 729.

342 F.3d 1159, 1165-67 (10th Cir. 2003); *Kosakow*, 274 F.3d at 728-29; *Bailey v. Miltope Corp.*, 513 F. Supp. 2d 1232, 1237 (M.D. Ala. 2007).

Here, Alabama collateral estoppel law governs whether the findings of the Alabama Department of Industrial Relations are entitled to preclusive effect. *See Elliott*, 478 U.S. at 799 ("[W]e hold that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (citation omitted) (quoting *Utah Construction & Mining Co.*, 384 U.S. at 422).

Alabama law provides that state agency decisions have preclusive effect if the following conditions are satisfied:

> (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Ex Parte Shelby Medical Center, Inc.*, 564 So. 2d 63, 68 (Ala. 1990) (quoting *Pantex Towing Corp. v. Glidewell*, 763 F.2d 1241, 1245 (11th Cir. 1985)); *see also Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999), *overruled on other*

32

*grounds by Ex Parte Rogers*, 68 So. 3d 773 (Ala. 2010) (quoting *Ex parte Smith*, 683 So. 2d 431, 433 (Ala. 1996)).

Plaintiff's unemployment compensation claim was brought pursuant to an Alabama statutory system that permits some unemployed individuals to receive unemployment compensation benefits. *See* Ala. Code § 25-4-1 *et seq.* Alabama Code § 25-4-78(3)(c) provides that "a claimant is partially disqualified from receiving unemployment-compensation benefits if he or she was discharged for misconduct committed in connection with work." *Smitherman*, 743 So. 2d at 445. Here, the Alabama Department of Industrial Relations found that plaintiff was disqualified from receiving unemployment compensation benefits because he was terminated for misconduct. Specifically, the Department of Industrial Relations found:

> The claimant[, plaintiff,] displayed a disregard of the employer's interests when he left the work site to take care of personal business without clocking out or informing his employer. His actions are deemed to be misconduct in connection with his work. Therefore, he would be subject to the disqualifying provision under [Ala. Code § 25-4-78(3)(c)].[120]

### a.    Identity of the parties or their privies

Turning to the five elements required under Alabama law for collateral estoppel to apply to a state administrative agency finding, the first element — which requires

---

[120] Doc. no. 22-17 (Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim), at 1 (alterations supplied).

an identity of the parties or their privies — is clearly satisfied.[121]

### b.    Identity of issues

The second element — an identity of issues — also is satisfied, because the same issue, the reason for plaintiff's termination, was before the Department of Industrial Relations and, now, this court. The Department of Industrial Relations had to decide whether plaintiff was disqualified from receiving unemployment compensation under the statute providing that "[a]n individual shall be disqualified for total or partial unemployment:  . . . If he was discharged from his most recent *bona fide* work *for* misconduct connected with his work . . ."  Ala. Code § 25-4-78(3)(c) (emphasis supplied).  The state agency found that:  "The employer terminated the claimant *for* leaving the work site without clocking out."[122]

---

[121] *See id.*; doc. no. 1 (Complaint), at 1.

[122]  *See* Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim, at 1 (emphasis supplied).  The decision of the Alabama Supreme Court in *Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442 (Ala. 1999), *overruled on other grounds by Ex Parte Rogers*, 68 So. 3d 773 (Ala. 2010), illustrates that the issue before the Alabama Department of Industrial Relations when considering partial disqualification from unemployment compensation benefits under Alabama Code § 25-4-78(3)(c) is the reason for the termination of the claimant.  In *Smitherman*, the Alabama Supreme Court was presented with the issue of whether a trial court erred in denying a defendant's motion for summary judgment on a plaintiff's state law retaliatory discharge under Alabama Code § 25-5-11.1 (providing that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits . . . ."), where the defendant moved for summary judgment on the grounds that the plaintiff's claim was collaterally estopped due to findings of the Department of Industrial Relations on disqualification from unemployment compensation under Alabama Code § 25-4-78(3)(c).  *Smitherman*, 743 So. 2d at 443.  The Alabama Supreme Court held that the findings of fact made by the Department of Industrial Relations collaterally estopped the plaintiff from asserting an alternate reason for her termination.  *Id.* at 448.  In particular, the court

As discussed previously, an employer lawfully can deny reinstatement to an employee returning from FMLA leave *if* it can show that it did so for a reason entirely unrelated to the employee's leave. *See Martin*, 543 F.3d at 1267. The language used by the Eleventh Circuit in describing that defense makes clear that the issue to be decided is the reason for the employee's termination — *i.e.,* the reason the employee was not reinstated. In *Schaaf*, the court stated that "the employer bears the burden of proving that the employee was discharged *for independent reasons* that were unrelated to the employee's [FMLA] leave." *Schaaf*, 602 F.3d at 1241 (emphasis supplied). In *Parris*, the court stated that the employer "bears the burden of proving that the employee would have been laid off during the FMLA period *for reasons unrelated to* the [FMLA leave]." *Parris*, 216 F.3d at 1301 n.1 (emphasis and alteration supplied). Therefore, the issue before the Department of Industrial Relations was the same as the issue now before the court for plaintiff's FMLA interference claim: the reason for plaintiff's termination.

---

found that there was an identity of issues between the Department of Industrial Relations decision as to disqualification under Alabama Code § 25-4-78(3)(c), and the plaintiff's retaliatory discharge claim: "that issue being the *reason for* [the plaintiff's] discharge." *Id.* at 446 (emphasis and alteration supplied). The partial disqualification issue required the hearing officer to determine whether the plaintiff was "discharged *for* misconduct." *Id.* at 445 (emphasis supplied). The retaliatory discharge claim required the plaintiff to bear the burden "of proving that [the defendant's] proffered *reason for* terminating her employment is not, in fact, the true reason." *Id.* at 446 (emphasis and alteration supplied).

### c.    Adequate opportunity to litigate the issue

The third element of collateral estoppel under Alabama law requires that the

parties had an adequate opportunity to litigate the issue to be estopped in the state

agency administrative proceeding.  In *Smitherman*, the Alabama Supreme Court held

that Alabama's Unemployment Compensation Act affords parties an adequate

opportunity to litigate the issue of discharge in an unemployment compensation claim

hearing.  *See Smitherman*, 743 So. 2d at 446.  The court provided the following

reasoning in support of that holding:

> The Unemployment Compensation Act requires that the appeals
> tribunal "afford[] the parties reasonable opportunity for [a] fair hearing."
> Ala. Code 1975, § 25-4-93.  The procedure for conducting the hearing
> is prescribed by regulations of the Department of Industrial Relations.
> *See* [Ala. Code] § 25-4-92(b); *see generally* Ala. Admin. Code r. 4. 480-
> 1-4-.04 to -.06.  Those regulations provide for a hearing at which the
> parties are afforded the opportunity to present evidence and testimony
> of witnesses given under oath.  *See* Ala. Admin Code r. 480-1-4-.04.  A
> party may be represented by an attorney.  *See* [Ala. Admin Code] r. 480-
> 1-4-.05.  The parties are also afforded the opportunity to request that the
> hearing officer issue subpoenas to compel the attendance of witnesses
> or the production of documents or other things.  *See* [Ala. Admin Code]
> r. 480-1-4-.06.

*Id.* (first two alterations in original).

The record in this case shows that a hearing was held at which both parties

were present with their representatives.[123]  Also, the Administrative Hearing Officer

---

[123]  *See* doc. no. 22-17 (Alabama Department of Industrial Relations Decision on
Unemployment Compensation Claim), at 1 ("APPEARANCES AT THE HEARING: Claimant with

made findings of fact based on the testimony and other evidence presented to her at that hearing.[124]

While there is no evidence of record that plaintiff asserted before the Department of Industrial Relations that his termination was related to his FMLA leave, that does not mean that he did not have *the opportunity* to assert that argument. In order to receive unemployment benefits, plaintiff had the burden to show that he was not discharged for the misconduct of leaving work without clocking-out as defendant asserted. *See Smitherman*, 743 So. 2d at 447. Thus, he had the burden of refuting defendant's asserted reason for his discharge. *See id*. If plaintiff believed that defendant discharged him because he took FMLA leave, then he had the burden to so prove. *See id.*

Plaintiff argues that he did not have an adequate opportunity to litigate the issue because, "as a state actor[,] the hearing officer lacked the authority to consider any federal claims of discrimination."[125]   Plaintiff cites *Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009), in support of his argument.  In *Bryant*, a panel of the Eleventh Circuit found that a state administrative agency finding was not entitled to preclusive effect because the hearing officer lacked the legal authority to consider the plaintiff's

---

representative and employer representative with witness.").

[124] *See id*.

[125] Doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 33.

argument that he was terminated on the basis of his opposition activities, and because the hearing officer did not make any findings of fact as to the reason for plaintiff's termination. *Id.* Thus, *Bryant* does not stand for the proposition that state administrative agency findings of fact generally are not entitled to collateral estoppel because state hearing officers cannot consider federal retaliation claims. Rather, *Bryant* stands only for the limited proposition that when state administrative hearing officers were not legally permitted to consider a plaintiff's asserted reason for his or her termination, the plaintiff is not collaterally estopped from later asserting that reason.

Furthermore, and contrary to plaintiff's assertions, claimants do have the ability to assert before the Department of Industrial Relations that they were terminated for a reason other than the reason asserted by their former employer. *See Smitherman*, 743 So. 2d at 445-46. Plaintiff has not directed this court to, nor has this court independently found, any authority providing that the Department of Industrial Relations may not consider a former employee's protected activities under the FMLA as the reason for his or her termination.

### d.    Actually litigated and determined

The fourth element also is satisfied because the reason for plaintiff's termination was actually litigated in the state administrative proceeding, and was

38

actually determined by the hearing officer.[126]

###       e.       Necessary to the agency decision

Finally, the fifth element is satisfied because the reason for plaintiff's termination was necessary to the decision of the Department of Industrial Relations.

Thus, all elements necessary under Alabama law for collateral estoppel to apply are satisfied, and plaintiff is collaterally estopped from relitigating the reason for — *i.e.*, the cause of — his termination.  The court must accept, as an established fact, the finding of the Alabama Department of Industrial Relations that plaintiff was terminated because of his failure to clock-out when leaving work.  Because termination for failure to clock-out is entirely unrelated to plaintiff's FMLA leave, defendant establishes that it did not interfere with plaintiff's right to be reinstated upon his return from FMLA leave.

###    2.    Merits

Even if the doctrine of collateral estoppel did not bar plaintiff's interference claim, his claim would still fail as a matter of law.  As discussed above, to establish a failure-to-reinstate interference claim, plaintiff only must show that he was entitled to, but was denied, reinstatement.  *See Martin*, 543 F.3d at 1267.  Defendant then has

---

[126] Alabama Department of Industrial Relations Decision on Unemployment Compensation Claim, at 1 (holding that "[t]he employer terminated the claimant for leaving the work site without clocking out").

the burden to establish that it denied reinstatement to plaintiff for a reason unrelated to plaintiff's FMLA leave. *See Schaaf*, 602 F.3d at 1241.

Defendant does not dispute that it is a covered employer under the FMLA, that plaintiff is an employee eligible to take FMLA leave, or that plaintiff was not reinstated to his former position upon returning from his leave for surgery.[127]  The only disputed issues are whether plaintiff actually took FMLA leave so as to be entitled to reinstatement, and whether defendant can establish that it refused to reinstate plaintiff — *i.e.*, terminated plaintiff — for a reason unrelated to his FMLA leave.[128]

### a.    Whether plaintiff took FMLA leave

Defendant initially asserts that plaintiff "never requested FMLA leave" and, thus, did not actually take FMLA leave.[129]  Defendant is wrong.  Contrary to its assertion, the record contains evidence sufficient to create a genuine issue of material fact as to whether plaintiff took FMLA leave.

The Act requires an employee in need of leave due to a serious health condition to

---

[127] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 17-21.

[128] *See id.* at 19-21.

[129] *See id.* at 19 n.3 ("United Plating does not concede Mr. Petty engaged in a protected activity.  Mr Petty never requested FMLA leave.").

provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . ., except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2)(B).  While the Act does not specify what actions or statements constitute sufficient "notice," the implementing regulations do provide specific examples in the following provisions:

> (a) An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on . . . *planned medical treatment for a serious health condition of the employee* or of a family member.  *If 30 days notice is not practicable*, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, *notice must be given as soon as practicable*. . . .

> (b) "As soon as practicable" means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case.  For foreseeable leave where it is not possible to give as much as 30 days notice, "*as soon as practicable*" *ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee*.

> (c) *An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave*.  The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example. . . .

29 CFR § 825.302 (emphasis supplied).  If an employee fails to provide timely notice,

> [a]n employer may waive [the employee's] FMLA notice

obligations or the employer's own internal rules on leave notice requirements. If an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a).

29 C.F.R. § 825.304(e) (alterations supplied).

Here, plaintiff provided in "late November 2007" notice to at least Jim Butler — the manager in charge of granting medical leave — that he needed to take time off for prostate cancer surgery. As a serious health condition, prostate cancer surgery creates a potentially FMLA-qualifying reason for leave. *See* 29 C.F.R. § 825.113 (defining a "serious health condition" for FMLA purposes as "an illness, injury, impairment or physical or mental condition that involves inpatient care.").

It is unclear whether the specific date in "late November 2007" on which plaintiff gave notice was thirty days prior to the date of plaintiff's surgery on December 11, 2007. It also is unclear whether the prostate cancer surgery was scheduled prior to the date in "late November 2007" on which plaintiff gave notice of his need to take leave. However, even assuming that plaintiff's request for leave in "late November 2007" did not provide fully thirty-days notice, plaintiff again informed Fann and Butler on December 10, 2007 that he needed to take time off on

the following day for prostate cancer surgery, *and Fann instructed plaintiff to take the needed time off.* Thus, Fann approved plaintiff's request for leave, and waived any objection to plaintiff's request on the grounds that plaintiff failed to provide sufficient notice.

### b. Whether defendant establishes that it denied plaintiff his right to reinstatement for a reason unrelated to his FMLA leave

The employer bears the burden of proving that it denied reinstatement for a reason unrelated to the employee's FMLA leave. *Schaaf*, 602 F.3d at 1241. The court is to "look to the evidence in the record to determine" whether the plaintiff "has raised a reasonable inference" that the defendant would not have terminated him had he not taken FMLA leave. *Parris*, 216 F.3d at 1302. Where an employer offers evidence that it denied an employee reinstatement for a reason unrelated to the employee's FMLA leave, and the employee does not offer any evidence to the contrary, summary judgment is due to be granted in favor of the employer on the employee's interference claim. *See Schaaf*, 602 F.3d at 1241.

Defendant asserts that it terminated plaintiff because he failed to clock-out when leaving work, rather than for any reason connected to his FMLA leave.[130]

---

[130] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 10 ("Mr. Petty agrees the only reason United Plating gave for his termination was his failure to clock out when he left work during work hours."); doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 9 ("Admit."); doc. no. 22-3 (Plaintiff's Deposition), at 104-07, 247.

Plaintiff asserts that defendant's reason creates an inference that his FMLA leave was a cause of his termination because he was terminated for the misconduct of not clocking-out, while other Production Managers and supervisors were not terminated despite committing the same misconduct.[131]  *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (holding that where the plaintiff employee is terminated for particular conduct, different treatment for other employees who do not share the plaintiff employee's protected characteristic is "[e]specially relevant to . . . a showing" of pretext).  Specifically, plaintiff presents evidence that during his employment with defendant, it was common for managers and supervisors to not clock-out when leaving work.[132]  White managers and supervisors regularly failed to clock-out when going to the bank, to visit sick relatives, or to conduct personal business.[133]

However, a fellow employee is not a proper comparator if the employer was not aware of that employee's misconduct.  *See Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).  Stated differently, an employer cannot discipline misconduct it does

---

[131] *See* Response in Opposition to Motion for Summary Judgment, at 22-23.

[132] *See id.* at 15; doc. no. 28 (Reply in Support of Motion for Summary Judgment), at 4.

[133] *See* Response in Opposition to Motion for Summary Judgment, at 15; Reply in Support of Motion for Summary Judgment, at 3-4; Plaintiff's Deposition, at 144-85.

not know about.   Plaintiff presents no evidence to show that the relevant decisionmakers, Fann and Butler, knew that any of those employees had violated company policy by leaving work without clocking-out.

All of the evidence in the record shows that, when Fann and Butler did learn of employees leaving work without clocking-out, those employees were terminated. Since 2003, defendant has terminated at least four other employees for not clocking-out when leaving work.[134]   Thus, because defendant presents uncontroverted evidence that it terminated plaintiff for not clocking-out, defendant establishes that it terminated plaintiff for a reason unrelated to his FMLA leave.

## C.   Title VII and 42 U.S.C. § 1981 Race Discrimination Claims

Plaintiff asserts two race-based discrimination claims under Title VII:  one for discriminatory discipline, and another for wage discrimination.[135]   He also asserts identical claims under 42 U.S.C. § 1981.[136]   Section 1981 has been described as "a parallel remedy against [racial] discrimination which . . . derive[s] its legal principles from Title VII."   *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1315 n.27

---

[134] *See* Brief in Support of Motion for Summary Judgment, at 11; Response in Opposition to Motion for Summary Judgment, at 9; doc. no. 22-2 (Affidavit of Jim Butler) ¶ 44.

[135] *See* doc. no. 1 (Complaint) ¶¶ 21-23.

[136] *See id.*

(5th Cir. 1980) (quoting *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979)).[137]

## 1.    Discipline

To establish a *prima facie* case of disparate treatment in the application of disciplinary measures a plaintiff must show that:  (1) he is a member of a protected class; (2) he engaged — either disputedly or admittedly — in misconduct similar to that of similarly situated co-employees outside the protected class; and (3) the similarly situated co-employees outside the protected class received more favorable treatment than plaintiff:  *i.e.,* despite such similarities, "the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct."  *Gerwens*, 874 F.2d at 1540; *see also Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998).

It is undisputed that plaintiff is African-American and, thus, a member of a protected class, and that he engaged in the misconduct of leaving work without clocking-out.[138]  Therefore, to establish a *prima facie* case, plaintiff only must present

---

[137] In other words, because "[b]oth of these statutes have the same requirements of proof and use the same analytical framework, . . . [the court] shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."  *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (alteration supplied); *see also*, *e.g.*, *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980) ("When section 1981 is used as a parallel basis for relief with Title VII against disparate treatment in employment, its elements appear to be identical to those of section 706 [of Title VII, *i.e.*, 42 U.S.C. § 2000e-5].") (citations omitted).

[138] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 7, 21-25; doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 7.

46

evidence showing that similarly situated, non-African-American employees received more favorable treatment than the treatment he received.

The following is a concise summary of the Eleventh Circuit's guidance on what is required to show that two employees are similarly situated:

> "In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotations and citations omitted). We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

*Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). Thus, plaintiff must show that employees outside his protected class were *found guilty* of the same or "nearly identical" misconduct, yet were disciplined in different ways. *Id.*; *see also, e.g., Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001) ("The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed."). As previously discussed, however, for an employee to be similarly situated in terms of disciplinary

actions the supervisor who disciplined the plaintiff *must have been aware of the misconduct of the purported comparator.*  See *Knight*, 330 F.3d at 1317 n.5; *Gerwens*, 874 F.2d 1542.

Here, plaintiff asserts that several Production Managers and supervisors — *i.e.*, Jeff Harbin, Larry Hunt, Cleo Moon, Scott Davis, Brian Loveday, Johnny Loveday, and Allen Christian — are similarly situated individuals because they also left work without clocking-out.  But plaintiff presents no evidence to show that Fann or Butler, the supervisors who disciplined him, knew on the date of firing plaintiff that those other individuals also had left work without clocking-out.[139]  Because plaintiff cannot show that Fann and Butler knew that other employees were leaving work without clocking-out, he cannot show that other employees were disciplined more favorably and, thus, cannot establish a *prima facie* case of discrimination in disciplinary treatment.

Furthermore, even if plaintiff could establish a *prima facie* case of disparate treatment in the application of disciplinary measures, his claim would still fail as a matter of law.  The company policy of defendant provides that "[f]ailure to clock in and out can result in disciplinary action up to and including termination."[140]  Plaintiff

---

[139] *See* doc. no. 22-3 (Plaintiff's Deposition), at 150-188; Response in Opposition to Motion for Summary Judgment, at 31.

[140] *See* Brief in Support of Motion for Summary Judgment, at 4-5; Response in Opposition to Motion for Summary Judgment, at 3.

admits that he violated that policy by leaving work without clocking-out.[141]  Thus, defendant presents a legitimate, non-discriminatory reason for terminating plaintiff's employment:  violation of the company policy on leaving work without clocking-out.

Because defendant presents a legitimate, non-discriminatory reason, the burden shifts back to plaintiff, who must present evidence that the asserted reason is pretextual, *i.e.*, not the true reason for defendant's actions.  *See Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 937-38 (11th Cir. 1983).  Plaintiff may do so "either by means of affirmative evidence that race played an impermissible role in the decision or by showing that the proffered nondiscriminatory reasons do not merit credence."  *Id.* at 938.  Plaintiff only argues that defendant's asserted reason for his termination is pretextual because white employees were not terminated despite committing the same misconduct.  Again, however, there is no evidence of record that Fann or Butler knew on the date of terminating plaintiff's employment that those other employees were not clocking-out.  Thus, plaintiff fails to show that defendant's proffered reason is pretextual, and plaintiff's Title VII and § 1981 claims for disparate treatment in the application of disciplinary measures fail as a matter of law.

---

[141] *See* Plaintiff's Deposition, at 136-39.

### 2.    Compensation

Plaintiff also asserts Title VII and § 1981 wage discrimination claims on the grounds that defendant paid him less than employees outside of his protected class. Defendant asserts that the Title VII race-based wage discrimination claim fails because plaintiff did not satisfy the administrative requirements for asserting that claim.  Defendant also asserts that both the Title VII and § 1981 wage discrimination claims fail as a matter of law because plaintiff cannot establish a *prima facie* case.

### a.    The administrative prerequisites for Title VII claims

A plaintiff must satisfy a number of administrative prerequisites before filing a claim under Title VII.  Foremost among those is the requirement that a charge of discrimination be submitted to the EEOC within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) ("No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.").

As a result of that requirement, a plaintiff is barred from asserting in a lawsuit Title VII claims that were not previously asserted in his EEOC charge.  *See* 42 U.S.C. § 2000e-5; *Alexander*, 207 F.3d at 1332.   Specifically, "[a] plaintiff's judicial

50

complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 (11th Cir. 1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)).

Plaintiff's initial EEOC charge only asserted that he was discriminated against in the form of his "discharge."[142] Plaintiff also submitted an amended EEOC charge, but it also only asserted that he was discriminated against in the form of his "discharge."[143] Notably, neither plaintiff's initial EEOC charge nor his amended charge ever mentioned his, or any other employee's, compensation.[144]

A claim for racial discrimination in the payment of compensation is not so obviously related to a claim for racially-disparate treatment in the termination of employment that it reasonably would be expected to grow out of the EEOC investigation of the discriminatory discipline claim. *See Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1174 (M.D. Ala. 1995) ("Courts have found that a charge

---

[142] *See* doc. no. 22-15 (January 11, 2008 EEOC Charge), at 2 ("I believe I was discharged because of my race, in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age, in violation of the Age Discrimination in Employment Act of 1967.").

[143] *See* doc. no. 22-16 (January 19, 2009 EEOC Charge), at 2 ("I believe I was discharged because of my race, in violation of Title VII of the Civil Rights Act of 1964, as amended and because of my age, in violation of the Age Discrimination in Employment Act of 1967, as amended. I also believe that after my employer learned of my disability, I was discriminated against because of it and retaliated against.").

[144] *See* January 11, 2008 EEOC Charge, at 2; January 11, 2008 EEOC Charge, at 2.

based on racial discrimination does not encompass all potential claims for denial of promotions, pay raises, transfers, and overtime."); *Mack v. Grace Co.*, 578 F. Supp. 626, 632 (N.D. Ga. 1983) (holding that "discrimination with regard to salary" was not "so obviously related to discriminatory discharge . . . that the Court could expect an EEOC investigation to extend to such claims"). Thus, plaintiff is procedurally barred from asserting his Title VII claim for discrimination in compensation.

### b.    Merits

The foregoing conclusion does not control the discussion of plaintiff's race-based wage discrimination claim under § 1981, inasmuch as there are no administrative prerequisites to the maintenance of a § 1981 claim. *See, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975). Even so, because, as discussed above, the standards of proof for Title VII and § 1981 claims are the same, the court's holding on the merits of plaintiff's § 1981 wage discrimination claim applies as an alternative holding on his Title VII wage discrimination claim.

To present a *prima facie* case of race-based wage discrimination, a plaintiff must demonstrate that:  "(1) [he] belongs to a racial minority; (2) [he] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) [he] was qualified to receive the higher wage." *Cooper v. Southern Co.*, 390 F.3d 695, 734-45 (11th Cir. 2004), *overruled on other grounds by*

52

*Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (alterations supplied).

Defendant argues that plaintiff cannot satisfy the third element of the *prima facie* case because he cannot show that a similarly situated, non-African-American employee received a higher level of compensation than him. "To make a comparison of plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "The comparator [employees] must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). Relevant to that analysis is the issue of whether the plaintiff and the comparators performed the same type of job tasks. *Cooper*, 390 F.3d at 734-35. Also relevant is whether the employees have different educational backgrounds, levels of experience, or other qualifications. *See*, *e.g.*, *Lee v. Mid-State Land & Timber Co., Inc.*, 285 F. App'x 601, 606-07 (11th Cir. 2008) (finding that a plaintiff and an asserted comparator were not similarly situated because the asserted comparator had education, training, and experience that the plaintiff did not have).

At the time of his termination, plaintiff was paid $15.00 an hour, and supervised eight employees as Production Manager for the phosphate and zinc

production lines.[145]  Plaintiff was responsible for inspecting, filling, heating, and taking samples from the tanks of chemicals used in the phosphate and zinc lines; moving parts to the production line; inspecting the quality of completed parts; and operating a forklift.[146]

Plaintiff asserts that the following individuals are similarly situated white individuals who were paid at a higher rate:   Jeff Harbin, Bobby Christian, Larry McAllister, and Larry Hunt.[147]  The court will consider each asserted comparator in turn, beginning with Harbin.

Jeff Harbin was the manager of the paint and blasting operations.[148]  As such, he had different job tasks — painting and blasting parts — than did plaintiff. Additionally, Harbin supervised 50 to 75 employees:  a much larger number of subordinates than the eight employees plaintiff supervised.[149]  For those reasons, plaintiff and Harbin were not similarly situated for purposes of compensation.

---

[145] *See* doc. no. 21 (Brief in Support of Motion for Summary Judgment), at 6; doc. no. 26 (Response in Opposition to Motion for Summary Judgment), at 4; doc. no. 22-3 (Plaintiff's Deposition), at 89, 245-46.

[146] *See* Plaintiff's Deposition, at 92-93; doc. no. 27-1 (Plaintiff's Declaration) ¶ 5.

[147] *See* Brief in Support of Motion for Summary Judgment, at 30; Response in Opposition to Motion for Summary Judgment, at 27; Plaintiff's Deposition, at 198.

[148] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 5, 13; doc. no. 28 (Reply in Support of Motion for Summary Judgment), at 3-4.

[149] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2.

Bobby Christian, as the Production Manager for anodization, silk screen operations, and masking operations, also had substantially different job tasks than plaintiff.[150]   For example, he supervised a complex process utilizing photographic equipment and ink to imprint an image onto a metal part.[151]   Additionally, Christian supervised a much larger number of employees, approximately 30 employees and two lead men, than did plaintiff.[152]   Furthermore, Christian, unlike plaintiff, was a nationally recognized expert in his field.[153]   Thus, plaintiff and Christian were not similarly situated employees for compensation purposes.

Larry McAllister, as Quality Control Manager, supervised all chemical processes on the production lines.[154]   His job required an extensive knowledge of chemistry, which plaintiff's job did not.[155]   Additionally, McAllister has a college degree in chemistry, whereas plaintiff only has a GED and completed some technical

---

[150] *See* Brief in Support of Motion for Summary Judgment, at 2-3; Response in Opposition to Motion for Summary Judgment, at 2-3.

[151] *See* doc. no. 22-1 (Deposition of Mike Fann), at 54.

[152] *See* Brief in Support of Motion for Summary Judgment, at 2; Response in Opposition to Motion for Summary Judgment, at 2.

[153] *See* Brief in Support of Motion for Summary Judgment, at 2-3; Response in Opposition to Motion for Summary Judgment, at 3.

[154] *See* Brief in Support of Motion for Summary Judgment, at 2-3; Response in Opposition to Motion for Summary Judgment, at 3.

[155] *See* Deposition of Mike Fann, at 75.

college course-work in auto mechanics.[156]  For those reasons, plaintiff and McAllister were not similarly situated employees for compensation purposes.

Finally, Larry Hunt, as manager of the Maintenance Department, was responsible for purchasing parts for defendant's equipment and keeping all of the equipment in working order.[157]  Such a position would, by its very nature, require a detailed knowledge of all of defendant's equipment.  Thus, Hunt's job tasks and skills were substantially different from plaintiff's job tasks and skills.  For those reasons, plaintiff and Hunt were not similarly situated for compensation purposes.

Because plaintiff cannot show that any similarly-situated, non-African-American employees received higher compensation, he fails to present a *prima facie* case of race-based wage discrimination, and his Title VII and § 1981 race-based wage discrimination claims fail as a matter of law.

## V.  CONCLUSION AND ORDER

Upon consideration of the foregoing issues, defendant's motion to strike portions of plaintiff's declaration is granted in part and denied in part.  Defendant's motion to strike the unsworn statements is granted.  Finally, defendant's motion for summary judgment is granted, and all claims are dismissed with prejudice.  Costs are

---

[156] *See* Brief in Support of Motion for Summary Judgment, at 4; Response in Opposition to Motion for Summary Judgment, at 3; Plaintiff's Deposition, at 16-17.

[157] *See* Brief in Support of Motion for Summary Judgment, at 3; Response in Opposition to Motion for Summary Judgment, at 3.

taxed to plaintiff.  The Clerk is directed to close this file.

DONE this 31st day of May, 2012.

_____
United States District Judge